# Richmond

MARGARET N. PARKS AND PRESTON D. PARKS, HER HUSBAND
v. M. JEANNETTE PARKS.

January 18, 1943.

Record No. 2594.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*H. Ames Drummond* and *C. Lester Drummond*, for the appellants.

*Ernest Ruediger, Elmer W. Somers* and *J. Brooks Mapp*, for the appellee.

GREGORY, J., delivered the opinion of the court.

Mrs. M. Jeannette Parks filed her bill of complaint in the court below against her son, Dr. Preston D. Parks and his wife, Margaret N. Parks, praying that two deeds, which had been made by her conveying her life estate in certain property, be set aside. One of these deeds was made on February 13, 1939, conveying the same estate to Margaret N. Parks. The cause was referred to a commissioner in chancery, who heard all of the testimony, and he reported that the deed of February 13, 1939, was invalid. He held further that the deed of October 18, 1929, was valid and binding. The defendants (appellants) filed no exception to the adverse holding in the commissioner's report. The court below confirmed that part of the report which established the invalidity of the deed of February 13, 1939, and rejected that portion which established the validity of the deed of October 18, 1929, and by its decree set aside as invalid both deeds.

Upon this appeal it is conceded that we are limited to the ascertainment of the validity of the deed of October 18, 1929. What we may say of the other deed will be purely incidental and for the purpose of shedding some light upon the question now to be decided.

This is the third of a series of cases in which these parties have been either directly or indirectly interested and which have reached this court. The two preceding ones are *Parksley Nat. Bank* v. *Parks,* 172 Va. 169, 200 S. E. 629, and *Parks* v. *Wiltbank,* 177 Va. 461, 14 S. E. (2d) 281.

In 1909, Edward T. Parks died and by the first clause of his will he left the real estate here involved to his wife, Jeannette (the appellee) during her natural life, and at her death to be divided equally between her surviving heirs. This clause of the will has never been construed by the court and it is not essential that we now do so.

The surviving widow, Mrs. M. Jeannette Parks, is now nearly 80 years of age and there are surviving three children: Dr. Preston D. Parks, Mrs. Nita P. Wiltbank and Mrs. Mable Platt.

In 1917, Mrs. Platt decided to convey her contingent one-third interest in the property to J. Harry Rew, trustee, to secure the Accomack Banking Company bonds aggregating $8,500 and to make the lien more secure, Mrs. M. Jeannette Parks was called upon to join in the trust conveyance thereby placing her life estate in trust to secure to the bank the payment of the bonds of Mrs. Platt. Mrs. Parks did not owe any of the secured debts and joined in the deed of trust purely as an accommodation.

Later, Mrs. Platt was in financial difficulties and one of her judgment creditors instituted a creditor's suit against her, in which Mrs. M. Jeannette Parks was joined as a defendant, for the purpose of subjecting the real estate of Mrs. Platt and the life interest of Mrs. M. Jeannette Parks to the payment of Mrs. Platt's debts. J. Harry Rew was appointed a special commissioner to sell the real estate including the life interest of Mrs. M. Jeannette Parks. Before sale was made, however, the creditors agreed to accept the sum of $5,000 in satisfaction of the lien against the interest of Mrs. Platt and to release the lien on the life interest of Mrs. M. Jeannette Parks.

The appellant, Mrs. Margaret N. Parks, wife of Preston D. Parks, states that she turned over to him $5,000 which he

paid to the special commissioner. A deed (the one now in controversy) dated October 19, 1929, was made by the special commissioner, in which Mrs. M. Jeannette Parks joined, conveying her life interest to her son, Preston D. Parks. This deed was not recorded by Dr. Parks until nearly eleven and one-half years after it was made.

At the same time the above deed was made, another deed, made by Mrs. Platt and the creditors, conveying to Dr. Preston D. Parks her contingent one-third interest in the property, was also executed and delivered to Dr. Parks. He immediately placed this latter deed of record. No satisfactory reason for giving two deeds, where one would have sufficed, is given by Dr. Parks who supervised the consummation of the transaction and who was supposed to have been looking after the interest of his mother for whom he had been confidential agent.

Mrs. M. Jeannette Parks and her daughter, Mrs. Platt, both testified that the interest of Mrs. Platt alone was intended to be conveyed to Dr. Parks and that it was agreed by all of the parties, including Dr. Parks, that the life interest of Mrs. M. Jeannette Parks, which she had conveyed to Rew, trustee, for the sole accommodation of Mrs. Platt, was to be released to her.

Dr. Parks testified that his wife, Margaret Parks, provided the $5,000 and the conveyance should have been made to her; that he purchased for her not only the contingent interest of Mrs. Platt, but also the life interest of his mother and that he was holding the same as trustee for his wife.

The property in question was valued by Dr. Parks in his testimony in one of the former suits at $30,000. It has had an annual rental value of from $1,000 to $2,300.

The testimony reveals that Dr. Parks had always acted as his mother's agent, until the present controversy arose, and had helped her look after the property. She had confidence in him and trusted him with her affairs.

In addition to the testimony of Mrs. M. Jeannette Parks and Mrs. Platt, which clearly shows that none of the parties

ever intended that Mrs. M. Jeannette Parks was to convey her life interest to Dr. Parks, are some significant and quite conclusive corroborative circumstances. After the deed of October 18, 1929, Mrs. M. Jeannette Parks exercised every known act of ownership over the property and treated it as her own with the complete acquiescence and express assent of Dr. Parks until after February 13, 1939, about eleven and a half years. She paid the taxes and insurance and collected the rents and kept the property in repair. She compensated Dr. Parks for helping her by allowing him to keep a small portion of the rent. Another outstanding circumstance is the withholding of the deed from record for nearly eleven and a half years. Dr. Parks has not given any satisfactory reason for this rather unusual conduct.

Mrs. M. Jeannette Parks also testified that after the $5,000 had been paid, Dr. Parks brought to her and laid in her lap a paper and at that time said: "Mama, there is your release and don't you ever sign another paper as long as you live, even for me". At this time she was living with Dr. Parks and she stated that she took the paper without looking at it and laid it on his desk and from that time she has never again seen it. She thought that paper was the release of her life interest which had been promised her.

In 1934, Dr. Parks was in financial difficulties and the Parksley National Bank brought a suit against him and his wife. The purpose of the suit was to annul and set aside a deed of trust given by him conveying all of his property in trust to secure his wife the payment of $32,438 and to subject that property and any other interest he might have to the payment of his debts. It is significant to note that if Dr. Parks did own the life estate of his mother, he concealed this fact from his creditors who were seeking in the Parksley National Bank suit to subject any and all of his interest in any property he owned. If he owned the life estate he withheld it from the deed of trust he gave to secure his wife, but expressly included therein the contingent one-third interest he had bought from Mrs. Platt. Dr. Parks frankly states in his testimony in the present suit that he "didn't tell

all. I didn't feel occasion to tell all", when he testified in the former suit. Time after time in his testimony in the former suit Dr. Parks freely stated that his mother still owned her life interest in the property, when at that time he had in his possession the unrecorded deed from his mother conveying that interest to him. In the pleadings he admitted her ownership. Not once did he ever intimate that he had acquired it, though he did say that he had acquired the contingent one-third interest of Mrs. Platt.

The commissioner in chancery, to whom the former cause of Parksley National Bank was referred, reported to the court that "M. Jeannette Parks holds a life estate in the Dunne Avenue property. (The property in question.) Its annual rental value is $1,000. Its fee simple value is $7,500." No exception was taken to this part of the report by either Dr. Parks or his wife and it was later accordingly affirmed by the court. At this time he likewise had in his possession the unrecorded deed from his mother.

At the time of the former suit Dr. Parks was operating a drug store on a portion of the property in which his mother had the life interest. Upon his failure in business, followed by a levy on his fixtures, he filed a claim for six months rent in favor of his mother as landlord and owner, and it was allowed to the extent of $250, which was paid his mother. Of course, if he really had acquired his mother's life interest in 1929 he would not have claimed for her six months rent in property she did not own. Dr. Parks boldly states that he concocted this fraudulent scheme of claiming rent for his mother when she was not entitled to it, and he is now asking this court to establish the title to the mother's life interest in him or his wife through the deed of October 18, 1929, when in 1936 he was frankly asserting that this life interest still belonged to his mother.

The very building in which Dr. Parks conducted the drug store, after his failure, was leased by Mrs. M. Jeannette Parks, Dr. Parks and his wife and Mrs. Wiltbank to one Henderson. In this lease, again Dr. Parks recognized in

1936 that his mother was the owner of the life estate for he joined with her in the lease.

On February 13, 1939, Mrs. M. Jeannette Parks signed another paper which turned out to be another deed conveying her life interest to Margaret N. Parks, wife of Dr. Parks. Mrs. M. Jeannette Parks explains this transaction by testifying that Dr. Parks asked her to sign this paper and thereby avoid a law suit. He then carried her to the office of Mr. Scarborough, an attorney. There both Dr. Parks and Mr. Scarborough assured her that if she would sign the paper a law suit would be avoided. The attorney told her that some clause in one of the papers could bring about a law suit. Neither of them mentioned the property in question or her life estate therein and she stated that she did not know at the time that she was signing a deed to her daughter-in-law conveying to her all of her property without receiving any compensation whatever. She did not owe Dr. Parks or his wife any money and no reason is shown in the evidence for the conveyance other than the one given by her, and the fact that she had confidence in her son, Dr. Parks, and Mr. Scarborough, and desired to comply with her son's wish.

The first time she realized what she had done was when she learned that Dr. Parks, or his wife, had notified the tenants to pay them the rent from that time.

If the deed of October 18, 1929, were valid and passed the title to the life estate to Dr. Parks, then the deed of February 13, 1939, was a nullity for the interest of Mrs. Parks had already passed. On the other hand, if the deed of October 18, 1929, were not valid, then the deed of February 13, 1939, to Mrs. Margaret Parks was not based upon any consideration whatever, and it likewise would not have been valid. However the validity of the deed of February 13, 1939, is not now for us to determine. It has already been decided by the lower court that it was not valid and no appeal has been taken from that decision.

If Dr. Parks and Mrs. Margaret Parks, his wife, testified truthfully in 1934 in the former suit of *Parksley Nat. Bank*

v. *Parks*, 172 Va. 169, 200 S. E. 629, where they expressly stated that Mrs. M. Jeannette Parks still owned her life estate in the property, then their testimony in the present suit to the effect that she had sold and conveyed the life estate to Dr. Parks, or to his wife, in 1929, is most assuredly untrue. Their testimony in the former suit contradicts and completely refutes their testimony in the present suit, renders it of no value whatever and unworthy of consideration.

The commissioner in chancery, to whom this present cause was referred, reported that the deed of October 18, 1929, to Preston D. Parks, "is a valid and binding deed and should not be set aside". This deed purported to convey the life estate of Mrs. M. Jeannette Parks. Neither Dr. Parks nor his wife, Margaret Parks, excepted to this report. Mrs. Margaret Parks, who was a party to this suit, will not now be heard to say that the report incorrectly established that Dr. Parks had become the owner of the life estate instead of herself. If Mrs. Margaret Parks actually purchased and paid for the life interest as she now claims, it is difficult to believe that she would have stood by and without protest knowingly permitted the commissioner in chancery to establish the life interest in her husband, Dr. Parks.

Dr. Parks is now asking this court to sustain the conveyance to him of the life interest in 1929 when all of the testimony in this cause clearly shows that he never at any time owned, or claimed that he owned, the life interest. He has always claimed in this suit (contrary to what he claimed in the Parksley National Bank suit) that the life interest of his mother was purchased by Mrs. Margaret Parks. The very fact that Dr. Parks persuaded his mother to execute and deliver the invalid deed purporting to convey the life interest to Mrs. Margaret Parks on February 13, 1939, makes certain that Dr. Parks never owned that interest.

The finding by the commissioner in chancery that Dr. Parks was the owner of his mother's life interest by reason of the deed of October 18, 1929 is not supported by

the evidence, is not claimed by Dr. Parks, and the court was correct in rejecting that finding.

The deed of October 18, 1929, was not based upon consideration and was never delivered to Dr. Parks with intent to convey the life estate to him. The testimony clearly shows that only the contingent interest of Mrs. Platt was intended to be conveyed for the consideration of $5,000. There is no evidence that any portion of the $5,000 went to Mrs. M. Jeannette Parks. If Dr. Parks and his wife prevail here, the mother will be deprived of a valuable life estate in the property for which she receives nothing at all.

The $5,000 was evidently an adequate price to be paid for Mrs. Platt's one-third contingent interest alone, for Dr. Parks offered a like amount for a like contingent interest of his other sister, Mrs. Wiltbank.

The evidence discloses that there was no delivery of the deed of October 18, 1929, from Mrs. M. Jeannette Parks to her son, Dr. Parks. Dr. Parks, while acting for his mother and assuring her that he was procuring a release of all liens against her life estate, secured the deed from her conveying the life estate to him. He carried this deed to his mother and as he handed it to her, he said: "Mama, there is your release and don't ever sign another paper as long as you live, even for me." Instead of delivering the deed to Dr. Parks, as she would have done if she had intended to convey to him her life estate, she then placed the deed upon the desk and from that time never saw it again. It later was found in the possession of Dr. Parks who intentionally withheld it from recordation for more than eleven years. He not being satisfied about the validity of the transaction, on February 13, 1939, persuaded his mother to sign another deed under the pretense that her signature was necessary to prevent a law suit, while in reality he, by the transaction, received in his wife's name another deed to the life estate which admittedly was without consideration and void.

Intent governs delivery. *Garrett* v. *Andis*, 159 Va. 150, 165 S. E. 657. There not only is an entire lack of affirmative evidence tending to show delivery, but the cir-

cumstances sufficiently negative an intent of Mrs. M. Jeannette Parks to deliver the deed to Dr. Parks. It is true he testified that she made delivery to him but considering the relation of confidence and trust imposed in him by his mother, considering the mother's testimony which tends to show that no delivery was made and, considering the added fact that the mother thought the instrument was the release of the lien on her life interest which had been promised by Dr. Parks, we cannot accept his statement that a delivery of the deed was made, in the face of these significant circumstances and the testimony of the mother.

We unhesitatingly affirm the decree of the trial court because it is so plainly and manifestly right.

*Affirmed.*